1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   ELISEO ALATORRE,                        No.  2:12-cv-02394-MCE-DAD

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   WASTEQUIP MANUFACTURING
     COMPANY LLC, and DOES 1-50,
15   inclusive,

16              Defendants.

17

18        Through this action, Plaintiff Eliseo Alatorre ("Plaintiff") seeks relief for various

19   violations of California state law arising from the termination of his employment with

20   Defendant Wastequip Manufacturing Company LLC ("Defendant").  Specifically, Plaintiff

21   alleges that Defendant is liable for: (1) disability discrimination in violation of FEHA;

22   (2) failure to provide reasonable accommodations in violation of FEHA; (3) failure to

23   engage in the good faith interactive process under FEHA; (4) retaliation in violation of

24   FEHA; (5) failure to take reasonable steps to prevent retaliation and/or discrimination

25   under FEHA; (6) intentional infliction of emotional distress; and (7) wrongful termination

26   in violation of public policy.  (ECF No. 1.)  Presently before the Court is Defendant's

27   Motion for Judgment on the Pleadings.  (ECF No. 7.)  Defendant also requests that the

28   Court take judicial notice of certain documents.  (ECF No. 7-3.)

                                              1

1  Plaintiff filed a timely opposition to the motion.  (ECF No. 11.)  For the reasons set forth

2  below, Defendant's Motion is granted in part and denied in part.[1]

3

4  **BACKGROUND[2]**

5

6  Prior to June 4, 2004, Plaintiff was an owner and operator of McLaughlin Refuse

7  Equipment, Inc.  The company designed and manufactured refuse dumpsters and

8  similar products.  On June 4, 2004, Plaintiff sold his business to Wastequip.  Following

9  the sale of his company, Plaintiff became an employee of Wastequip.  Plaintiff remained

10  an employee in good standing for eight years with Wastequip.  The company recognized

11  his superior performance and Plaintiff received increased job duties and responsibilities

12  within the company.  While employed with Wastequip, Plaintiff met or exceeded all of

13  Wastequip's performance expectations.

14  On January 31, 2012, as a result of minor medical concerns, Plaintiff had an MRI

15  performed on his brain.  Shortly thereafter, Plaintiff learned that he had a tumor on his

16  pituitary gland and was told to schedule an appointment with a specialist.  On

17  February 23, 2012, Plaintiff consulted with a specialist.  The specialist informed Plaintiff

18  that Plaintiff would need brain surgery as soon as possible.

19  On March 14, 2012, two of Plaintiff's superiors—Chuck Worley, Wastequip's

20  General Manager of the West Coast, and Vince Tabb, Wastequip's CEO—were at

21  Plaintiff's work location.  Neither Worley nor Tabb regularly worked out of Plaintiff's

22  facility.  Near the end of the day, Plaintiff informed Worley and Tabb that he had been

23  diagnosed with a brain tumor.  The following day, March 15, 2012, at 4:45 PM, Worley

24  sent Plaintiff an email stating:

25  ///

26  [1] Because oral argument will not be of material assistance, the Court orders this matter submitted
on the briefs.  E.D. Cal. Local R. 230(g).

27

28  [2] The following factual background is taken, sometimes verbatim, from Plaintiff's Complaint (ECF
No. 1 at 14-15) unless otherwise stated.

2

1
2
3
4

Please note the attached prescription form and job description.  If you are going to be taking medication during your treatment, we need these completed please.  This is a safety precaution, to let your doctor know your work environment, and approve your prescriptions for use in this environment. . . .  Would like these back by Monday [March 19, 2012] if they apply.

5   Plaintiff provided these forms, indicating that Plaintiff's medication did not interfere with

6   his performance of his job duties.

7           On March 21, 2012, Wastequip terminated Plaintiff's employment.  Defendant

8   informed Plaintiff that he was being terminated for "performance."  Plaintiff's medical

9   benefits were also terminated that day.  As a result of Defendant's actions, Plaintiff

10   suffered loss of earnings and benefits, humiliation, and embarrassment, as well as

11   severe mental and emotional distress and discomfort.

12

13                                    **STANDARD**

14

15           Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on

16   the pleadings" after the pleadings are closed "but early enough not to delay trial."  Fed.

17   R. Civ. P. 12(c).  A Rule 12(c) motion challenges the legal sufficiency of the opposing

18   party's pleadings and operates in much the same manner as a motion to dismiss under

19   Rule 12(b)(6).  Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).

20   The primary distinction between a Rule 12(b)(6) motion and a motion for judgment on

21   the pleadings is timing.  Rule 12(b)(6) motions are typically brought before the defendant

22   files an answer, while a motion for judgment on the pleadings can only be brought after

23   the pleadings are closed.  Fed. R. Civ. P. 12(c); Edwards v. City of Goldsboro, 178 F.3d

24   231, 243 (4th Cir. 1999).  Any party may move for judgment on the pleadings under Rule

25   12(c) after the pleadings are closed but within such time as to not delay trial.

26           A motion for judgment on the pleadings should only be granted if "the moving

27   party clearly establishes on the face of the pleadings that no material issue of fact

28   remains to be resolved and that it is entitled to judgment as a matter of law.'"

3

1  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir.

2  1989).  Judgment on the pleadings is also proper when there is either a "lack of

3  cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable

4  legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  In

5  reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be

6  accepted] as true and construe[d] . . . in the light most favorable to the non-moving

7  party."  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  Judgment on the

8  pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted

9  under any set of facts that could be proved consistent with the allegations."  Deveraturda

10  v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations

11  omitted).

12        Although Rule 12(c) does not mention leave to amend, courts have the discretion

13  in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant

14  dismissal of the action instead of entry of judgment.  See Lonberg v. City of Riverside,

15  300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); Carmen v. S.F. Unified Sch. Dist.,

16  982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

17

18                                    **ANALYSIS**

19

20        Defendant's Motion seeks judgment on the pleadings as to Plaintiff's claims for

21  failure to provide reasonable accommodations, failure to engage in the good faith

22  interactive process, retaliation, intentional infliction of emotional distress and Plaintiff's

23  request for civil and statutory penalties.

24  ///

25  ///

26  ///

27  ///

28  ///

1

**A.  Judicial Notice**

2

3        Defendant requests that the Court take judicial notice of a form provided to

4   Plaintiff's physician by Defendant, and filled out by Plaintiff's physician, on the grounds

5   that this letter is incorporated by reference in Plaintiff's complaint.  "As a general rule, 'a

6   district court may not consider any material beyond the pleadings in ruling on a Rule

7   12(b)(6) motion.'"  Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001) (quoting Branch

8   v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds by Galbraith v.

9   Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)).  As when ruling on a motion to

10  dismiss pursuant to Rule 12(b)(6), a court considering a motion for judgment on the

11  pleadings may take into account materials which are the proper subject of judicial notice.

12  Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 (9th Cir. 1999).  Under

13  Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to

14  reasonable dispute in that it is either (1) generally known within the territorial jurisdiction

15  of the trial court or (2) capable of accurate and ready determination by resort to sources

16  whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Pursuant to

17  Rule 201, courts may take judicial notice of "undisputed matters of public record."  Lee,

18  250 F.3d at 688.

19        The doctrine of incorporation by reference is distinct from judicial notice.  The

20  doctrine of incorporation by reference permits a district court to "consider documents

21  whose contents are alleged in a complaint and whose authenticity no party questions,

22  but which are not physically attached to the . . . pleadings."  In re Silicon Graphics Sec.

23  Litig., 183 F.3d 970, 986 (9th Cir. 1999) (quoting Branch, 13 F.3d at 454).

24        Accordingly, the form filled out by Plaintiff's physician is not appropriate for the

25  Court to judicially notice, as it is not generally known within this Court's territorial

26  jurisdiction or "capable of accurate and ready determination" based on sources of

27  unquestionable accuracy.  Fed. R. Evid. 201.  However, the Court may properly consider

28  the contents of this document under the doctrine of incorporation by reference.

1  Plaintiff does not question the authenticity of this document, and the Complaint states

2  that "Plaintiff provided his forms indicated [sic] that the medication he was taking did not

3  interfere."  (ECF No. 1 at 14.)  However, the Court cannot consider this document for the

4  truth of the matter it asserts, as the statements contained within the document are

5  hearsay.  See Fed. R. Evid. 801 (defining hearsay), 802 (rule against hearsay).

6       Defendant also requests that the Court take judicial notice of Plaintiff's Complaint.

7  As this document is the operative Complaint in the present action, there is no need for

8  judicial notice of it—the contents of the Complaint are already properly before the Court.

9  (See ECF No. 1.)  Accordingly, Defendant's request for judicial notice is denied as to this

10  claim.

11

12       **B.  Failure to Provide Reasonable Accommodations**

13

14       Pursuant to FEHA, "[i]t shall be an unlawful employment practice, unless based

15  on a bona fide occupational qualification . . . [f]or an employer or other entity covered by

16  this part to fail to make reasonable accommodation for the known physical or mental

17  disability of an applicant or employee."  Cal. Gov't Code § 12940(m); Dep't of Fair Emp't

18  & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 743 (9th Cir. 2011).  "Reasonable

19  accommodation may include . . . '[j]ob restructuring, part-time or modified work

20  schedules, reassignment to a vacant position, acquisition or modification of equipment or

21  devices, adjustment or modifications of examinations, training materials or policies, the

22  provision of qualified readers or interpreters, and other similar accommodations for

23  individuals with disabilities."  Cal. Gov't Code § 12926(n); see also  Dept' of Fair Emp't &

24  Hous., 642 F.3d at 743.  The Ninth Circuit has explicitly stated that "[a] leave of absence

25  for medical treatment may be a reasonable accommodation . . . ."  Humphrey v. Mem'l

26  Hosps. Ass'n, 239 F.3d 1128, 1135 (9th Cir. 2001) (discussing Americans with

27  Disabilities Act ("ADA")).

28  ///

6

1    "The elements of a failure to accommodate claim are (1) the plaintiff has a disability

2    under the FEHA; (2) the plaintiff is qualified to perform the essential functions of the

3    position; and (3) the employer failed to reasonably accommodate the plaintiff's disability."

4    Scotch v. Art Inst. of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009-10 (Cal. Ct.

5    App. 2009).

6         Here, Defendant offers several arguments in support of its motion for judgment on

7    the pleadings as to Plaintiff's second cause of action.  First, Defendant argues that

8    Plaintiff's complaint contains no allegation that Plaintiff actually needed an

9    accommodation, let alone asked for such an accommodation.  Thus, Defendant argues,

10   Plaintiff has failed to establish the third element of the cause of action, because

11   Defendant could not reasonably accommodate Plaintiff when Plaintiff did not actually

12   need an accommodation.  In support of this argument, Defendant cites to Plaintiffs'

13   Complaint, wherein Plaintiff alleges that Worley asked Plaintiff, via email, to fill out

14   certain forms if Plaintiff would be taking medication during the course of his treatment.

15   Plaintiff alleges that he "provided his forms indicat[ing] that the medication he was taking

16   did not interfere."  (ECF No. 1 at 14.)  From these allegations, Defendant surmises that

17   "Plaintiff actually alleges that he did not need an accommodation."  (ECF No. 7-1 at 6.)

18   Second, Defendant asserts that Plaintiff's medical records reveal that Plaintiff did not

19   need accommodations, as the records state that Plaintiff's medications would not

20   interfere with his job performance.  According to Defendant, these allegations establish

21   that Defendant had no duty to accommodate, as Plaintiff needed no accommodation.

22   Defendant therefore contends it is entitled to judgment on Plaintiff's claim for failure to

23   accommodate.

24        However, "[t]o establish a failure to accommodate in violation of FEHA, [the

25   plaintiff] must demonstrate that his employer was aware of his disability and refused to

26   accommodate it."  Arn v. News Media Group, 175 F. App'x 844, 846 (9th Cir. 2006).

27   ///

28   ///

7

1   In other words, "to succeed on a FEHA claim for failure to accommodate, a plaintiff must

2   show that he (1) has a disability of which the employer is aware, and (2) is a qualified

3   individual." Diaz v. Fed. Express Corp., 373 F. Supp. 2d 1034, 1054 (C.D. Cal. 2005).

4   Similarly, the Northern District of California has stated that "[t]he interactive process is

5   triggered either by a request for accommodation by a disabled employee or by the

6   employer's recognition of the need for such an accommodation." Swonke v. Sprint Inc.,

7   327 F. Supp. 2d 1128, 1137 (N.D. Cal. 2004) (emphasis added); see also Foster v. City

8   of Oakland, 649 F. Supp. 1008, 1022 (N.D. Cal. 2009) ("Under FEHA, the failure of an

9   employer to make reasonable accommodations for the known disabilities of an employee

10  constitutes an unlawful employment practice.  The duty to accommodate an employee's

11  disability arises when the employer has knowledge that the employee is disabled.");

12  Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 887 (Cal. Ct. App. 2007)

13  ("[A]n employer knows an employee has a disability when the employee tells the

14  employer about his condition, or when the employer otherwise becomes aware of the

15  condition.") (quoting Schmidt v. Safeway Inc., 864 F. Supp. 991, 997 (D. Or. 1994) (ADA

16  case)).  Indeed, at least one California Court of Appeal has rejected an employer's

17  "suggestion that the disabled employee must first come forward and request a specific

18  accommodation before the employer has a duty to investigate such accommodation."

19  Prilliman v. United Air Lines, Inc., 53 Cal. App. 4th 935, 954 (Cal. Ct. App. 1997).

20      In short, Defendant's narrow reading of the case law is without merit.  It is clear

21  that an employee's failure to specifically request a reasonable accommodation does not

22  preclude a claim against the employer for failure to provide reasonable accommodations

23  if the employer in fact knows of the employee's disability.  Certainly "the employee has

24  'the burden of giving the employer notice of the disability,'" Holtzclaw v. Certainteed

25  Corp., 795 F. Supp. 2d 996, 1018 (E.D. Cal. 2011) (citing Raine v. City of Burbank,

26  135 Cal. App. 4th 1215, 1222 (2006)), and an employer has no duty to accommodate a

27  disability of which it has no knowledge, Prilliman, 53 Cal. App. 4th at 954.

28  ///

1   For example, the Ninth Circuit held in Arn that the employee's conversations with his

2   employer about his stressful job situation "were overly vague, [and] [Plaintiff] never

3   informed his employer that his stress was causing a disability or that he needed

4   accommodations."  175 F. App'x at 846.  By contrast, in this case, Plaintiff clearly

5   informed two of his superiors that he had been diagnosed with a brain tumor, and his

6   superior Worley (notably, the CEO of the company) apparently understood that Plaintiff

7   would be undergoing "treatment."  (ECF No. 1 at 14.)  Thus, Plaintiff has alleged facts

8   sufficient to show that his employer did have knowledge of his alleged disability.

9         Thus, while Defendant argues that Plaintiff demands clairvoyance of the employer

10  and never informed Defendant of the reasonable accommodation requested, Plaintiff did

11  not need to request a specific accommodation.  Plaintiff can successfully state a claim

12  for relief by alleging facts showing that Defendant was aware of Plaintiff's disability and

13  "was aware of the need to consider an accommodation."  See Scotch, 173 Cal. App. 4th

14  at 1013.  Here, Plaintiff has pled facts sufficient to show that Defendant was aware of

15  Plaintiff's disability and refused to accommodate it.

16        Of course, Plaintiff must also plead facts sufficient to show that Plaintiff had a

17  disability within the meaning of FEHA, and that Plaintiff is a qualified individual under

18  FEHA.  See Scotch, 173 Cal. App. 4th at 1010.  A "qualified individual is an individual

19  with a disability who (1) satisfies the requisite skill, experience, education and other job-

20  related requirements of the employment position, and (2) who, with or without

21  reasonable accommodation, can perform the essential functions of such position."

22  Kelley v. Corrections Corp. of Am., 750 F. Supp. 2d 1132, 1139 (E.D. Cal. 2010)

23  (citations and internal quotations omitted).  Plaintiff has pled facts sufficient to state

24  these elements of the cause of action (see ECF No. 1 at 16), and Defendant implicitly

25  acknowledges that Plaintiff has done so.  (ECF No. 7-1 at 5.)  Accordingly, Defendant's

26  motion for judgment on the pleadings for this claim is denied.

27  ///

28  ///

1

**C.  Failure to Engage in the Good Faith Interactive Process**

2

3          "Under the FEHA, '[i]t is an unlawful employment practice . . . [f]or an employer

4   . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to

5   determine effective reasonable accommodations, if any, in response to a request for

6   reasonable accommodation by an employee . . . with a known physical or mental

7   disability.'"  Dep't of Fair Emp't & Hous., 642 F.3d at 742 (quoting Cal. Gov't Code

8   § 12940(n)).  "[T]he interactive process requires communication and good-faith

9   exploration of possible accommodations between employers and individual employees

10  with the goal of identify[ing] an accommodation that allows the employee to perform the

11  job effectively."  Id. (quoting Nadaf–Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App.

12  4th 952 (2008)).  Liability under the "interactive process" provision of FEHA "hinges on

13  the objective circumstances surrounding the parties' breakdown in communication, and

14  responsibility for the breakdown lies with the party who fails to participate in good faith."

15  Scotch, 173 Cal. App. 4th at 1014.  "The interactive process is triggered either by a

16  request for accommodation by a disabled employee or by the employer's recognition of

17  the need for such an accommodation."  Swonke, 327 F. Supp. 2d at 1137.  "Employers,

18  who fail to engage in the interactive process in good faith, face liability for the remedies

19  imposed by the statute if a reasonable accommodation would have been possible."

20  Humphrey, 239 F.3d at 1137-38.

21          Defendant contends that the facts showing that Plaintiff was asked if his

22  medication interfered with his job, and that Plaintiff responded that it did not, evidence

23  that Defendant engaged in the interactive process with Plaintiff.  Defendant further

24  contends that "the interactive process took place and it ended because Plaintiff stated

25  there was no need for an accommodation."  (ECF No. 7-1 at 8.)

26  ///

27  ///

28  ///

1    However, reaching the conclusion that "Plaintiff stated that there was no need for

2    an accommodation" from the fact that Plaintiff's doctor stated that Plaintiff's medication

3    did not interfere with Plaintiff's ability to perform his job requires an enormous, and

4    unwarranted, logical leap.  There are other reasonable accommodations that Plaintiff

5    might have sought and which Defendant might have granted, such as allowing Plaintiff to

6    take time off work.  See Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000)

7    ("Holding a job open for a disabled employee who needs time to recuperate or heal is in

8    itself a form of reasonable accommodation and may be all that is required where it

9    appears likely that the employee will be able to return to an existing position at some

10   time in the foreseeable future.").  Plaintiff alleges that he gave Defendant notice of his

11   disability, and that Defendant asked Plaintiff about his medications and whether they

12   would interfere with his work.  Thus, Defendant clearly recognized that Plaintiff might

13   need some form of accommodation.  However, according to Plaintiff, Defendant fired

14   Plaintiff one week later rather than continue the process of interacting to find a

15   reasonable accommodation for Plaintiff.  (ECF No. 1-15.)

16   Accordingly, Plaintiff has alleged facts sufficient to show that Defendant failed to

17   engage in the interactive process in good faith and Plaintiff has therefore pled facts

18   sufficient to establish this cause of action.  Accordingly, Defendant is not entitled to

19   judgment as a matter of law on this claim, and Defendant's motion is denied.

20

21   **D.  Retaliation**

22

23   Under FEHA, "[t]o establish a claim for retaliation, the plaintiff has the initial

24   burden to show (1) that she engaged in a protected activity, (2) she was subjected to an

25   adverse employment action, and (3) that there was a causal link between the protected

26   activity and the adverse action." Kelley, 750 F. Supp. 2d at 1143 (citing Jadwin v. Cnty.

27   of Kern, 610 F. Supp. 2d 1129, 1185 (E.D. Cal. 2009)).  Requesting a reasonable

28   accommodation is a protected activity.

1  Coons v. Sec'y of the U.S. Dep't of Treasury, 383 F.3d 879, 887 (9th Cir. 2004)

2  (Rehabilitation Act case applying ADA standards); Lintz v. Potter, 2:09-CV-01907 GEB,

3  2012 WL 2995674 (E.D. Cal. July 23, 2012); but see Kelley, 750 F. Supp. 2d 1132 (E.D.

4  Cal. 2010) (holding that requesting accommodation is not a protected activity under

5  FEHA, as protected activity must involve "some level of opposition to the employer's

6  actions based on the employee's reasonable belief that some act or practice of the

7  employer is unlawful").

8         Although the Court finds the reasoning and statutory analysis of Kelley to be the

9  more persuasive, the Court is bound by the Ninth Circuit precedent of Coons, 383 F.3d

10  879 (citing Heisler v. Metro. Council, 339 F.3d 622, 630 n.5 (8th Cir. 2003) ("the ADA

11  prohibits an employer from retaliating against an employee who seeks an

12  accommodation in good faith")).  Coons discusses the Rehabilitation Act, 29 U.S.C.

13  § 791.  Courts apply ADA standards to both Rehabilitation Act claims, see Coons,

14  383 F.3d 879, and to FEHA claims, see Humphrey, 239 F.3d 1128.  Thus, the analysis

15  used by the Ninth Circuit in Coons applies with equal force to retaliation claims under

16  FEHA.  Moreover, the language of the ADA regarding retaliation is substantively identical

17  to that of FEHA.  The ADA provides that "[n]o person shall discriminate against any

18  individual because such individual has opposed any act or practice made unlawful by

19  this chapter or because such individual made a charge, testified, assisted, or participated

20  in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C.

21  § 12203(a).  FEHA provides that "[i]t is an unlawful employment practice . . . [f]or any

22  employer, labor organization, employment agency, or person to discharge, expel, or

23  otherwise discriminate against any person because the person has opposed any

24  practices forbidden under this part or because the person has filed a complaint, testified,

25  or assisted in any proceeding under this part."  Cal. Gov. Code § 12940(h).  Accordingly,

26  in the Ninth Circuit, requesting a reasonable accommodation is a protected activity under

27  FEHA which can give rise to a retaliation claim.

28  ///

1    In this case, Plaintiff alleges that he requested a reasonable accommodation and

2    requested to engage in the interactive process.  (ECF No. 1 at 18.)  Plaintiff also alleges

3    that he was terminated from his employment because he engaged in these protected

4    activities.  (Id.)  Defendant moves for judgment on the pleadings for Plaintiff's retaliation

5    claim on the ground Plaintiff has not alleged facts to show that she was engaged in a

6    protected activity.  Specifically, Defendant argues "Plaintiff alleges that he did not need

7    an accommodation," and thus cannot have engaged in protected conduct.  (ECF No. 7-1

8    at 9.)  As stated above, Defendant's contention that Plaintiff informed Defendant that he

9    did not need an accommodation has no basis in the allegations and documents

10   incorporated by reference.

11   Nonetheless, Plaintiff's retaliation claim is without merit.  While actually *requesting*

12   an accommodation is a protected activity under Ninth Circuit precedent, Plaintiff does not

13   allege that he requested an accommodation.  Rather, Plaintiff's pleadings establish that

14   Plaintiff put Defendant on notice that he had a disability, which then required Defendant

15   to provide an accommodation and engage in the interactive process.  See supra.  There

16   is no authority requiring the Court to find that Plaintiff engaged in a protected activity

17   simply by putting Defendant on notice of his disability.  Defendant's Motion for Judgment

18   on the Pleadings is therefore granted with leave to amend as to this claim.

19

20       **E.  Intentional Infliction of Emotional Distress**

21

22   A prima facie claim for intentional infliction of emotional distress "requires:

23   (1)  outrageous conduct by the Defendant[;] (2) intention to cause or reckless disregard

24   of the probability of causing emotional distress[;] (3) severe emotional suffering[;] and

25   (4) actual and proximate causation of the emotional distress."  Cole v. Fair Oaks Fire

26   Prot. Dist., 43 Cal. 3d 148, 155 n.7 (1987).  "There is liability for conduct exceeding all

27   bounds usually tolerated by a decent society, of a nature which is especially calculated

28   to cause, and does cause, mental distress."

13

1   Id. (internal citations and quotations omitted).  Conduct that is objectively offensive and

2   that breaches society's standards of decency may still not qualify as outrageous

3   conduct." Yurick v. Sup. Ct. (Antonetti), 209 Cal. App. 3d 1116, 1123 (1989).

4       "The outrageousness of a defendant's conduct normally presents an issue of fact

5   to be determined by the trier of fact." Trerice v. Blue Cross of Cal., 209 Cal. App. 3d

6   878, 883 (1989)).  However, "a reviewing court may, as a matter of law, determine if

7   'defendant's conduct may reasonably be regarded as so extreme and outrageous as to

8   permit recovery.'" Dalkilic v. Titan Corp., 516 F. Supp. 2d 1177, 1188 (S.D. Cal. 2007)

9   (quoting Trerice, 209 Cal. App. 3d 878, 883 (1989)).  Defendant argues that managing

10   personnel does not rise to the level of outrageous conduct required to state a claim for

11   ntentional infliction of emotional distress.  Case law supports Defendant's position.  In

12   Janken v. GM Hughes Elec., the court held that "[m]anaging personnel is not outrageous

13   conduct beyond the bounds of human decency, but rather conduct essential to the

14   welfare and prosperity of society.  A simple pleading of personnel management activity is

15   insufficient to support a claim of intentional infliction of emotional distress, even if

16   improper motivation is alleged." 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996).  "If

17   personnel management decisions are improperly motivated, the remedy is a suit against

18   the employer for discrimination." Id.  Other district courts have followed Janken to hold

19   that termination for discriminatory or other improper reasons is insufficient to rise to the

20   level of outrageous conduct required for an intentional infliction of emotional distress

21   claim.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1   See Romaneck v. Deutsche Asset Mgmt., C05-2473 TEH, 2005 WL 2171987 (N.D. Cal.

2   Sept. 6, 2005) (finding that Defendants' alleged failure to accommodate and engage in

3   the interactive process, and Plaintiff's termination, even if in violation of public policy, did

4   not rise to the level of outrageous conduct required to state a claim for intentional

5   infliction of emotional distress); Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1186

6   (C.D. Cal. 2002) ("Terminating an employee for improper or discriminatory reasons, like

7   many other adverse personnel management decisions, is insufficiently extreme or

8   outrageous to give rise to a claim for intentional infliction of emotional distress.");

9   Bartalini v. Blockbuster Entm't, Inc., No. C-98-3943-SC, 1999 WL 1012383, at *10 (N.D.

10  Cal. Nov. 8, 1999) ("[C]ourts have generally refused to extend liability for emotional

11  distress to terminations based upon discriminatory motives unless accompanied by

12  aggravating factors, such as racial or ethnic slurs . . . . Moreover, even if [plaintiff] had

13  shown that his termination was in fact motivated [by discriminatory] animus, such action

14  is not per se outrageous.").  In short, "[pe]rformance reviews, counseling sessions, lay-

15  off decisions, and work assignments are all decisions that businesses make every day

16  . . . Even if these decisions were improperly motivated, they fall far short of the

17  necessary standard of outrageous conduct beyond all bounds of decency."  Helgeson v.

18  Am. Int'l Group, Inc., 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999).  Accordingly, the

19  Court finds that as a matter of law, Defendant's conduct as alleged in the Complaint

20  does not "excee[d] all bounds usually tolerated by a decent society."  Cole, 43 Cal. 3d at

21  155 n.7.

22      Moreover, to satisfy the third element of the tort of intentional infliction of

23  emotional distress, a plaintiff must have suffered severe or extreme emotional distress.

24  Cole, 43 Cal. 3d at 155 n.7.  The explanation of severe or extreme emotional distress set

25  forth in the Restatement Second of Torts, section 46, comment j, provides guidance:

26  "emotional tranquility is seldom attainable in this world, and some degree of transient

27  and trivial emotional distress is a part of the price of living among people.

28  ///

15

1    The law intervenes only where the distress inflicted is so severe that no reasonable man

2    could be expected to endure it."  See Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d

3    376, 397 (Cal. Ct. App. 1970); Bogard v. Emp'rs Cas. Co., 164 Cal. App. 3d 602, 616

4    (1985).  Facts must be alleged that indicate the nature or extent of any mental distress

5    suffered as a result of the alleged outrageous conduct.  Bogard, 164 Cal. App. 3d at 616.

6    Thus, a court may dismiss a claim for intentional infliction of emotional distress when

7    Plaintiff alleges only conclusory statements that lack the necessary specific facts to show

8    their nature or extent.

9           Here, Plaintiff's complaint states only that "Defendant's intentional and/or reckless

10   conduct was a substantial factor in causing Plaintiff severe emotional distress."  (ECF

11   No. 1 at 20.)  Plaintiff alleges that he suffered "loss of earnings and benefits, humiliation,

12   embarrassment, severe mental and emotional distress and discomfort."  (ECF No. 1 at

13   19.)  Plaintiff falls far short of alleging facts sufficient to state a claim for intentional

14   infliction of emotional distress, as Plaintiff fails to indicate the nature or extent of the

15   distress suffered.  Plaintiff's conclusory allegations regarding "humiliation,

16   embarrassment, severe mental and emotional distress" are inadequate.  Accordingly,

17   Plaintiff's claim for intentional infliction of emotional distress suffers from an "absence of

18   sufficient facts alleged under a cognizable legal theory."  Balistreri, 901 F.2d at 699.

19          Because Defendant's alleged conduct is not so extreme as to allow recovery, and

20   because Plaintiff fails to plead facts sufficient to meet the standard of extreme emotional

21   distress, Defendant's motion for judgment on the pleadings is granted with leave to

22   amend as to this claim.

23

24          **F.  Civil and Statutory Penalties**

25

26          Defendant moves to dismiss any claims for civil and statutory penalties, on the

27   grounds that none of Plaintiff's claims provide for civil or statutory penalties.

28   ///

16

1   Plaintiff does not oppose Defendant's motion to the extent that the Court wishes to deem

2   Defendant's motion as a Rule 12(f) motion to strike the request for civil and statutory

3   penalties.

4           Rule 12(f) states that a district court "may strike from a pleading an insufficient

5   defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

6   P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and

7   money that must arise from litigating spurious issues by dispensing with those issues

8   prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010)

9   (internal quotations omitted). As in Whittlestone, the damages at issue in this case are

10  precluded as a matter of law. Id. at 974. When a motion attempts to have certain

11  portions of a complaint dismissed, the proper procedural mechanism is a Rule 12(b)(6)

12  motion to dismiss. Id. "Were [the Court] to read Rule 12(f) in a manner that allowed

13  litigants to use it as a means to dismiss some or all of a pleading . . . , we would be

14  creating redundancies within the Federal Rules of Civil Procedure, because Rule

15  12(b)(6) already serves such a purpose." Id.

16          Accordingly, the Court cannot treat Defendant's motion as a Rule 12(f) motion to

17  strike. Instead, the Court treats Defendant's motion as one for judgment on the

18  pleadings. However, because the Court has the authority to simply grant dismissal when

19  ruling on a motion for judgment on the pleadings, see supra, the Court hereby dismisses

20  Plaintiff's claims for civil and statutory penalties.

21

22                                    **CONCLUSION**

23

24          For the reasons set forth above, IT IS SO ORDERED that Defendant's Motion for

25  Judgment on the Pleadings is:

26          1.      DENIED as to Plaintiff's claim for failure to provide reasonable

27                  accommodations;

28  ///

2.     DENIED as to Plaintiff's claim for failure to engage in the good faith interactive process;

3.     GRANTED with leave to amend as to Plaintiff's claim for retaliation;

4.     GRANTED with leave to amend as to Plaintiff's claim for intentional infliction of emotional distress; and

5.     Plaintiff's claim for civil and statutory penalties is DISMISSED with leave to amend.

Plaintiff shall file any amended complaint within twenty (20) days of the date this Order is filed electronically.  If no amended complaint is filed within said twenty (20)-day period, without further notice to the parties, final judgment shall be entered in favor of Defendant for Plaintiff's claim for retaliation and intentional infliction of emotional distress, and Plaintiff's claim for civil and statutory penalties shall be dismissed with prejudice.

IT IS SO ORDERED.


Dated:  March 1, 2013


_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE